IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JACK YOUNG,

    Plaintiff,

vs.                                    CASE NO. CV-00-J-867-NE

HIWAAY INFORMATION
SERVICES, INC.,

    Defendant.

### MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 9), and brief in support thereof ("brief in support"), to which the plaintiff failed to respond. The defendant has also submitted evidence in support of its motion (doc. 10). The court has reviewed the motion, the brief in support of the motion and the evidentiary submissions of the parties.

### I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against him on the basis of age, as evidenced by the alleged hiring of someone younger and less qualified, after which the plaintiff was terminated. Complaint at ¶¶ 6-7. The plaintiff alleges that these actions were in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b). Upon consideration of the pleadings, brief of the defendant, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted.

14

## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows: The plaintiff was hired by M.D. Smith, the defendant's principal owner and president, in 1998 to perform corporate billing functions. Complaint at ¶ 5; plaintiff depo. at 49-52, 55, 66, depo. of Mark Derrick at 17-18; Smith affidavit at ¶¶ 1-2. Defendant is an internet service provider. Derick depo. at 12-13.[1] The plaintiff had retired from his career as an accountant when he turned 65, but became bored and had been looking for a job. Plaintiff depo. at 24, 38-40, 46-47. The plaintiff had a general idea of what services defendant provided. *Id.* at 202-203. If someone questioned why the defendant's services were better than another company, or more desirable, plaintiff would have referred that person to someone who could answer that question. *Id.* at 204.

The plaintiff states he was hired to correct problems that existed in the corporate billing accounts. Plaintiff depo. at 68, 69, 78-79, 149. He had no involvement with individual accounts. *Id.* at 78-79, 152. The defendant had about three hundred corporate customers in 1998 prior to its purchase of two other companies. *Id.* at 153. These purchases greatly increased the plaintiff's workload and he expressed concern at the time that it may be more work than one person could handle. *Id.* at 190-191. The billing grew during the plaintiff's employment from under $200,000.00 a month to close to $800,000.00 a month. Derrick depo. at 36.

---

[1] Mark Derrick was the chief technical officer for defendant at the time in question. Derrick depo. at 13.

The plaintiff's job involved use of a computer program called Quick Books, with which plaintiff had no experience.[2] Plaintiff depo. at 52, 135. The plaintiff also used the program Excel. *Id.* at 80. He felt competent in using Excel and Word. *Id.* at 136. The plaintiff asserts that he was told he would be sent for training on Quick Books if needed, although he did learn the basics of it from another employee, Linda Finklea. *Id.* at 54, 70; Derrick depo. at 31. The plaintiff stated he asked Mark Derrick, his boss, several times about going to school and was told it would be arranged, but it was not. Plaintiff depo. at 84. Derrick states that Kathi Fansler and Reena Pearson provided the plaintiff training on Quick Books as well. Derrick depo. at 31.

Although plaintiff could have gone to school in a number of places, he stated, "I didn't see where I had time." Plaintiff depo. at 85. This was the only reason he did not go, although he questions why he was not given the opportunity. *Id.* at 85, 136. No one prevented him from going to school to learn more about the program he was using. *Id.* at 86-87. Further, he states he was never denied the opportunity to get additional training or schooling on Quick Books. *Id.* at 87. The plaintiff also states that for the purposes he used it, his ability on Quick Books was excellent. *Id.* at 137-138. He further states he never asked to go to school for Quick Books, but could have used such courses as he knew there were quicker ways to do things than how he did them. *Id.* at 138-139. He made no effort to learn them though. *Id.* at 141. Derrick testified that anyone who wanted training could

---

[2]According to Derrick, Quick Books is very easy to use and deigned to be picked up by someone with basic computer skills with no additional training. Derrick depo. at 35.

go find a school and defendant would pay for it. Derrick depo. at 32, *see also* Fansler depo. at 41-42. Derrick further stated that plaintiff never requested such training. Derrick depo. at 33.

The plaintiff testified that he would post payments to an account using Quick Books and then manually post the same to a deposit slip. Plaintiff depo. at 79. He would also enter this information in an Excel spreadsheet. *Id.* at 80. He did not know if he could post the information just once and then transfer it to other programs.[3] *Id.* at 80-81. The plaintiff testified he did this record keeping the way he knew and did not explore whether the information he was completing manually could be computer generated. *Id.* at 82-83. Derrick states that from the brief opportunities for observation of the plaintiff he had, he did not think the plaintiff did his job in a competent manner. Derrick depo. at 20. Derrick related this to Smith, who said to give the plaintiff more time to develop and keep him informed. Smith affidavit ¶ 2.

The plaintiff testified that he did not feel he was discriminated against based on initial salary, initial job assignment, fringe benefits or work environment. Plaintiff depo. at 56. He felt like everyone he worked with liked him and he had no problems with anybody. *Id.* at 94-95. He knows of no reason the owner, would not tell the truth about him or distort facts. *Id.* at 102-103. He further got along with Derrick fine and knows of no reason Derrick would want to hurt him or not tell the truth about him. *Id.* at 103-104. In fact, the plaintiff

---

[3]According to Fansler, the work plaintiff was doing manually could be done automatically with Quick Books. Fansler depo. at 43.

4

stated he never had any reason to believe that Derrick discriminated against older workers. *Id.* at 124-125. Similarly, he got along with Kathi Fansler well and has no reason to believe she would say anything untruthful about him. *Id.* at 104. The plaintiff testified "I was never mistreated, until the day I was let go." *Id.* at 109. Prior to his termination he never believed he was subjected to discrimination. *Id.* at 135. He also stated that he had no reason to believe that anyone he worked with was biased against older people other than his alleged replacement by a younger person whom he trained. *Id.* at 129.

However, the plaintiff also testified that prior to his termination, a "temporary girl" was given the responsibility of contacting Quick Books and given access to software for which he did not have a password. Plaintiff depo. at 162, 163-164. He also states that a lot of his accounting functions were taken away from him and given to Kathi Fansler when she was hired.[4] *Id.* at 162, 170. The software to which he was not given access was a program called Total Bill, with which he was unfamiliar.[5] *Id.* at 142, 165. He was also told he did not need to learn Total Bill because it was not going to be used for corporate billing. *Id.* at 167, 178. He states the reason for the reassignment of job responsibilities to others and lack of access to software were the result of age discrimination because "I can't imagine any other reason." *Id.* at 172. He further bases this on the fact that he was the oldest employee defendant had and that Derrick at one time inquired as to his health after the plaintiff was

---

[4] Kathi Fansler is a CPA. Plaintiff depo. at 172; Fansler depo. at 7. The plaintiff also alleges that Fansler was hired because of concerns over whether the plaintiff's health would allow him to do his job. Plaintiff depo. at 189.

[5] Total Bill is an ISP specific billing package targeted toward residential, individual customers. Derrick depo. at 37.

hospitalized for atrial fibrillation. *Id.* at 172, 179. *See* Derrick depo. at 45. He further states that the only reason he can think of that he was not trained with Total Bill was that "they knew I was not going to be there much longer." Plaintiff depo. at 183-184. Fansler testified that plaintiff was not trained on Total Bill because he was only using Quick Books and corporate billing was going to continue using that program. Fansler depo. at 16.

Mark Derrick testified that the owner, M.D. Smith, was older than the plaintiff and that there were other employees of similar age. Derrick depo. at 24. Derrick also testified that the plaintiff would get defensive and seemed to be in denial when he tried to talk to him about the quality of his work. *Id.* at 25.

The plaintiff had no experience or ability with the use of the mailing equipment defendant used either. Plaintiff depo. at 144, 145, 199. However, his job included getting the bills into the mail. Fansler depo. at 31, Fansler affidavit at ¶ 7. He had no experience with a number of computer programs other than Excel and had never been involved in taking a company public. Plaintiff depo. at 176-177. He had no experience in the implementation of any kind of computerized accounting system. *Id.* at 178. Derrick related to M.D. Smith that he believed the plaintiff was struggling in his job and that there was friction between him and other employees. Derrick depo. at 26, 29. Derrick again reported to Smith that the plaintiff was not working out and, if anything, making the billing problems worse. Smith affidavit at ¶ 3.

The plaintiff heard that a girl who he trained had replaced him, but he has not been back to the defendant's place of business and therefore cannot verify this. Plaintiff depo. at

187, 195. The plaintiff was told this person, Terri Cameron, was hired to assist him. *Id.* at 188, 190. The plaintiff also admits that because of the increased work load from the purchase of other companies, he needed help with his job. *Id.* at 191, 193, 196. The plaintiff alleges that Cameron was hired in April, 1999, for the purpose of taking over some of his job assignments and that Fansler was hired in December, 1998 for this same purpose. *Id.* at 194. Derrick testified that no one was hired to replace the plaintiff. Derrick depo. at 51. According to Fansler, Cameron was hired because defendant needed more people to do accounting. Fansler depo. at 20. She was hired to do special projects. *Id.* at 21. The plaintiff's duties were dispersed among several people. *Id.* at 32-33; Fansler affidavit ¶ 32.

According to Derrick, a position was created for Fansler to improve defendant's accounting, reporting and record keeping, and to implement a cohesive, coherent, automoated billing system. Derrick depo. at 47, 50, 60. Fansler stated she was hired to get Total Bill implemented. Fansler depo. at 10. The plaintiff was not considered for this job because it required data base skills and knowledge of complex computer programs. Derrick depo. at 60. Smith stated that Fansler was hired to head the department, and he hoped that this would ease the plaintiff's responsibilities so he could accomplish his remaining duties. Smith affidavit ¶ 3.

The plaintiff cannot imagine that his job assignments are being performed any better now. Plaintiff depo. at 198. However, Derrick alleges that the plaintiff did not improve the situation in corporate billing and, in fact, the situation got worse. Derrick depo. at 38-39, 52.

Derrick stated that, in his opinion, the plaintiff was barely qualified to do the job initially, and as the company grew, the job outgrew the plaintiff's skills. *Id.* at 54.

The plaintiff also testified that no one ever complained about his relationship with customers, no one ever complained about him not answering his phone or mastering the phone system and no one ever complained about his lack of initiative. Plaintiff depo. at 198-199. He further states no one expressed concern about him asking the same questions repeatedly, his lack of leadership, or his failure to master computer programs. *Id.* at 200. Additionally, no one expressed frustration to him over having to help him do his job and the plaintiff believed he had a good relationship with his fellow employees. *Id.* at 205. He was never counseled concerning his job performance. *Id.* at 205. Further, he was never asked to develop additional computer skills. *Id.* at 206. Derrick states that, from the time the plaintiff was hired, he heard complaints regarding the plaintiff's failure to help out and shirking his duties. Derrick depo. at 17-18; Fansler affidavit ¶ 23; *see also* NeSmith affidavit ¶ 4. He also stated that the plaintiff would ask the same questions over and over, and that customers would call regarding errors in bills over frustration from them not being corrected. Derrick depo. at 27, 29; Finklea affidavit ¶ 4. Additionally, Derrick's hope that the plaintiff would provide leadership in the billing department did not come to fruition and Linda Finklea complained about him frequently. Derrick depo. at 39. Finklea felt that she was having to do a large portion of plaintiff's job. Derrick depo. at 40; Finklea affidavit ¶ 4. Although most of the employees worked weekends, the plaintiff was rarely at work then. Derrick depo. at 59; Fansler depo. at 39.

Fansler also stated she had conflicts with the plaintiff. Fansler depo. at 12, 22-23. She further stated that her first month with defendant, there was a large error in the monthly statement, which was her first impression of plaintiff. *Id.* at 18-19, Fansler affidavit at ¶ 8. Fansler stated that the plaintiff asking questions about his computer was not a problem, the problem was that he asked the same questions over and over. Fansler depo. at 24. His computer skills were "marginal." Fansler affidavit at ¶ 9.

Fansler stated that she went to the plaintiff to ask him to do specific things, such as reporting in a different way which would be faster, and he repeatedly ignored her requests. Fansler depo. at 25. She stated this happened more than a dozen times. *Id.* at 28. Further, she stated that customers would complain that they could not reach him and that he would not answer his phone. *Id.* at 27.

Fansler went to M.D. Smith and told him why she believed the plaintiff needed to be fired and he approved it. Fansler depo. at 33-34; Smith affidavit at ¶ 6. The plaintiff was told by Fansler he was being terminated because the company was making changes and he did not fit into the future plans. Plaintiff depo. at 208; see also Fansler depo. at 34-35. This decision was made in late June or July, 1999. Fansler depo. at 27. Fansler testified that no one event caused her to fire plaintiff, although he had taken a toll on employee morale because of the amount of time other employees spent assisting him. *Id.* at 29-30, 39. Fansler did not say anything he thought was reflective of age discrimination. Plaintiff depo. at 208. Plaintiff states no one ever indicated to him that he was not performing at the level expected. *Id.* at 212-214. The plaintiff was given one month's severance pay. *Id.* at 214. The plaintiff

received unemployment compensation until he started a new job two months after this termination.[6] *Id.* at 221-222. Derrick had nothing to do with the plaintiff's termination, but agrees with this decision. Derrick depo. at 48, 49, 57.

Derrick stated that the complaints with plaintiff concerned his computer skills and skills with applications, not his accounting abilities. Derrick depo. at 28, 55. He also states that the plaintiff was in such denial regarding the problems he had at work that he was hard to approach about this. *Id.* at 31.

### III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying

---

[6]Derrick testified he changed what was written there so as to enable the plaintiff to draw unemployment compensation. Derrick depo. at 62.

those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of*

11

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## IV. Discussion

Under the ADEA, an employer may not discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1); *Chapman v. AL Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision. His age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted). To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 120 S.Ct. at 2105.

Under this burden shifting standard, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA. The

Court stated that a burden shifting scheme is employed, as follows: The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination. *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

To establish his prima facie case under the ADEA for age discrimination, plaintiff must show (1) he was a member of the protected group (age), (2) he was subjected to an adverse employment action, (3) he was qualified for the job and (4) he was replaced or otherwise lost a position to a younger individual. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997). *See also O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir. 1996). The defendant can feasiblely present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590. 596 (11th Cir.1987). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently

probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by the defendant were a pretext for discrimination." *Brown*, 939 F.2d at 950.

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

This court finds, taking the evidence presented in the light most favorable to the plaintiff, the plaintiff cannot establish a prima facie case of age discrimination because of the overwhelming evidence he was not qualified for the job he was hired to do. The defendant has presented undisputed evidence that the plaintiff simply could not run the computer programs that were considered to be an integral part of his job.

Furthermore, this court finds that the plaintiff was at least 65 years old at the time he was hired and at least a year older when he was fired. Any inference of discrimination is much weaker when the plaintiff is already well within the protected category when he was hired. *See e.g., O'Conner v. Viacom Inc./Viacom Int'l, Inc.*, 1996 WL 194299 at 7 (S.D.N.Y. April 23, 1996) *aff'd* 104 F.3d 356 (2nd Cir.1996); citing *Stanojev v. Ebasco*

14

*Servs., Inc.*, 643 F.2d 914, 921 (2nd Cir.1981). The court finds an inconsistency in the plaintiff's age discrimination claim, as he must establish that the very same person who decided to hire him in 1998 allowed him to be fired in 1999 because of his age. The plaintiff has presented no evidence to this court that stated reasons he was terminated were pretextual. The defendants' numerous examples of problems with the plaintiff's job performance call into question plaintiff's qualifications to do the job. *See Holiness v. Moore-Handley*, 114 F.Supp.2d 1176, 1182-1183 (N.D.Ala.1999) ("[The plaintiff's] assertions of his own good performance in the face of the documented deficiencies are insufficient to show that [defendants] proffered reasons are pretextual"), citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

While the plaintiff makes loose allegations that his job performance was acceptable, the plaintiff may not establish that an employer's proffered reasons are pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reasons are the kind that might motivate a reasonable employer. *Lee v. GTE Florida*, 226 F.3d 1249, 1253 (11th Cir. 2000). This court finds that any reasonable jury could find from the evidence before this court that the plaintiff was not terminated because of his age.

### IV. Conclusion

This court having considered all of the evidence and finding that the defendant's motion for summary judgment (doc. 9) is due to be granted on all counts of the complaint;

15

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on all counts of plaintiff's complaint and judgment shall be entered in favor of the defendants and against the plaintiff by separate order.

**DONE** and **ORDERED** this the ____8____ day of March, 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE